IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE LUDWIG<br>LK 2506<br>SCI Phoenix<br>1200 Mokychic Drive<br>Collegeville, PA 19426, | :<br>:<br>:<br>:<br>: | CIVIL ACTION |
| Plaintiff, | :<br>: | 2:22-cv-00487 |
| v. | :<br>: | JURY TRIAL DEMANDED |
| WELLPATH, LLC<br>600 N 12th Street, Suite 100<br>Lemoyne, PA 17043, | :<br>:<br>:<br>: | |
| DR. ANTHONY LETIZIO<br>SCI PHOENIX<br>1200 Mokychic Drive<br>Collegeville, PA 19426, | :<br>:<br>:<br>:<br>: | |
| DR. JOSEPH WALSH<br>SCI PHOENIX<br>Physician Assistant<br>1200 Mokychic Drive<br>Collegeville, PA 19426, | :<br>:<br>:<br>:<br>:<br>: | |
| Defendants. | : | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

**I.    PRELIMINARY STATEMENT**

1. This is a civil rights action for monetary damages brought pursuant to 42 U.S.C. §§ 1983 and 1988 as well as the Eighth and Fourteenth Amendments to the United States Constitution and raising supplemental state-law claims related to Defendants' deliberate indifference in failing to approve and ensure that Plaintiff receive necessary hip surgery from November 2019 to the present time while he has been incarcerated at the State Correctional Institution at Phoenix ("SCI Phoenix").

1

2.      Due to Defendants' decisions, which caused a more-than-two-year delay in getting Plaintiff necessary hip surgery, Plaintiff has suffered with severe pain, joint deterioration, reduced mobility, infection, shoulder and hip pain, and poor circulation.

3.      Plaintiff now seeks damages for the substantial pain and suffering caused by Defendants' conduct.

## II.     JURISDICTION

4.      The Court has jurisdiction over the subject matter of this complaint under 42 U.S.C. § 1983 and based upon 28 U.S.C. §§ 1331 and 1343 (a) (3); pendent jurisdiction of this Court to consider claims under state law; and supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a) to hear and adjudicate state law claims.

## III.    PARTIES

5.      Plaintiff, George Ludwig who is 49 years old, was at all times relevant to this complaint, an inmate at SCI Phoenix.

6.      Defendant Wellpath, LLC ("Wellpath"), which has a regional office in Cumberland County, Pennsylvania, was at all times relevant to this complaint the holder of a contract to provide medical services to inmates at SCI Phoenix.

7.      Defendant Dr. Anthony Letizio (hereinafter "Dr. Letizio"), who acted under color of state law, was at all times relevant to this complaint employed as a doctor for Defendant Wellpath and assigned to provide medical services at SCI Phoenix. He is sued in his individual capacity.

8.      Defendant, Physician Assistant Joseph Walsh (hereinafter "Dr. Walsh"), who acted under color of state law, was at all times relevant to this complaint employed as a physician assistant for Defendant Wellpath and assigned to provide medical services at SCI Phoenix. He is sued in his individual capacity.

## IV.          FACTUAL ALLEGATIONS

### A.     The Contract Between Defendant Wellpath and the Pennsylvania Department of Corrections.

9. From 2019 to the present, Defendant Wellpath had a contract with the Pennsylvania Department of Corrections ("DOC") that granted Wellpath the exclusive right to supply medical doctors, certified registered nurse practitioners, physician assistants, and other medical staff to the DOC, which includes SCI Phoenix.

10. The contract provided that the DOC would pay Defendant Wellpath a set amount of money in each calendar year to provide medical services to inmates at SCI Phoenix.

11. Upon information and belief, under the contract, Defendant Dr. Letizio and any other prior or subsequent medical director held the exclusive authority to determine whether SCI Phoenix patients should be referred for off-site medical services, including surgical procedures.

### B.     Plaintiff's Hip Degeneration

12. Hip reconstruction is a surgery that restores mobility and alleviates hip pain.

13. The symptoms necessitating hip reconstruction are hip disability, chronic pain, limitation of motion, a limp, and reliance on a walking aid to relieve pain.

14. If the hip is left untreated, it can result in infection, pain, loss of mobility, and the shortening of the affected leg.

### C.     Medical Defendants' Failure to Properly Treat Plaintiff's Hip Pain

15. On or about January 2, 2018, prior to his current incarceration at SCI Phoenix, Plaintiff had left hip replacement surgery at Wilkes-Barre General Hospital.

16. On or about July 15, 2019, Plaintiff went to Temple University Hospital complaining of chronic hip pain, which, upon information and belief, was the result of loose hardware and/or an infection in either the hardware or the joint that resulted from the prior surgery.

17. In August 2019, Plaintiff was hit by a car while riding a bicycle which caused further damage to his left hip.

18. Plaintiff experienced severe worsening of his hip pain after the accident.

19. From August 2019 to September 2019, Plaintiff was at Valley Forge Rehabilitation Center to treat the severe pain in his left hip from both the existing infection and/or loosening of the hardware and the subsequent accident.

20. On or about September 3, 2019, Plaintiff was examined by Dr. Julie Shaner of Temple University Hospital Orthopedics.

21. Dr. Shaner diagnosed Plaintiff with potential loosening of the hip component in Plaintiff's left leg as well as a potential left hip joint infection.

22. Dr. Shaner recommended that Plaintiff schedule an interventional radiology aspiration of his hip joint due to the infection as an outpatient and follow up with her in one month to review the results.

23. On or about September 26, 2019, Dr. Nicholas Tyner of Temple University Hospital examined Plaintiff due to continued discomfort in Plaintiff's hip.

24. During this examination, Plaintiff complained of continued left hip numbness, shooting pain, night sweats and vomiting.

25. During this examination by Dr. Tyner, Plaintiff was diagnosed with a septic left hip joint.

26. A septic joint is caused by a bacterial infection inside a joint space, necessitating treatment to avoid a life-threatening infection.

27. Dr. Tyner ordered a future orthopedic examination of Plaintiff, which was not scheduled at that time.

28. On or about September 26, 2019, a hip aspiration of the septic joint was scheduled for the following week by Dr. Tyner.

29. Due to Plaintiff's subsequent scheduling conflicts, no aspiration was performed at the recommended time.

30. On or about November 1, 2019, Dr. Shane Lee performed a left hip fluid aspiration procedure on Plaintiff at Temple University Hospital.

31. On or about November 21, 2019, Plaintiff was admitted to Temple University Hospital to treat an abscess from his groin area and a bone spur from his pelvic area. Both health issues resulted in ongoing pain in the left hip.

32. During this hospital stay, Dr. Shaner concluded that the hardware in his left hip should be replaced due to loosening of the femoral stem implant. Upon information and belief, Dr. Shaner also informed Plaintiff that his arthritis could be worsened by the infection from the septic joint around the implant.

33. On or about November 26, 2019, Plaintiff was transferred to SCI Phoenix on a parole violation. Due to this transfer, the hip replacement procedure never occurred.

34. On or about November 27, 2019, Plaintiff had his intake evaluation at SCI Phoenix. During this examination, Plaintiff showed Nurse Paula Purnavel his stitches, and told her about the hip replacement procedure planned at Temple University Hospital, and that he needed a crutch to move due to the pain in his left hip at the time of this evaluation.

35. On or about December 13, 2019, Plaintiff was examined by Nurse Paula Purnavel at SCI Phoenix. During this examination, Plaintiff complained of hip spasms and an inability to walk without crutches.

36. Plaintiff's records from Temple University Hospital were not in the prison medical records system as of December 13, 2019, resulting in a lack of continuity of care.

37. On or about January 6, 2020, Plaintiff was examined by Dr. Stephen Kaminsky at SCI Phoenix, at which time he questioned the integrity of the left hip hardware and previous septic left hip joint.

38. On or about January 16, 2020, while Plaintiff was in the medical department for further examination by a physician, Nurse Purnavel observed that plaintiff's left hip had severe limited range of motion, and a tenderness to hip palpation.

39. On or about January 16, 2020, Dr. Gordon conducted an on-site orthopedic consultation at SCI Phoenix to evaluate Plaintiff's left hip as a follow up to Dr. Kaminsky's evaluation.

40. Dr. Gordon noted in Plaintiff's medical records that he needed surgery; and, due to severe hip pain, Dr. Gordon prescribed Plaintiff pain medication.

41. Upon information and belief, Dr. Gordon referred Plaintiff to Physical Therapist John Waters at SCI Phoenix after Dr. Gordon's examination. Physical Therapist Waters checked Plaintiff's range of motion, indicated that he needed a lot of work and said he would wait and see what happened to Plaintiff's injury. No follow-up was done.

42. On or about January 16, 2020, Dr. Weiner, who at the time was the Medical Director at SCI Phoenix and who has since passed away, initiated a referral for Plaintiff for a consultation with Dr. Shaner at Temple University Hospital Orthopedics based upon Dr. Kaminsky and Dr. Gordon's previous examinations of Plaintiff.

43. On or about January 21, 2020, Plaintiff received a follow up appointment with Dr. Shaner. Dr. Shaner noted that Plaintiff needed surgery to remove the left hip hardware and that

his hip infection should be treated with absorbable antibiotic beads. Dr. Shaner further noted that surgery should try to be set up "as expeditiously as possible" due to the infection.

44.     On or about February 23, 2020, Dr. Weiner initiated the referral for Plaintiff's surgery to remove his damaged left prosthetic hip and treat the septic joint infection. Upon information and belief, this referral was prompted by Dr. Shaner's recommendation of expeditious treatment.

45.     In or about February 2020, Plaintiff's surgery was scheduled for February 16, 2021, with Dr. Shaner, about one full year after the referral.

46.     Plaintiff was on a medical hold for much of 2020. Upon information and belief, inmates were not being taken to outside treatment due to the COVID-19 pandemic.

47.     On or about March 20, 2020, Dr. Weiner placed an order for Plaintiff to receive special diabetic shoes, upon information and belief, to assist with the side effects from his hip condition. This order was subsequently denied by Defendant Walsh.

48.     In April 2020, Dr. Jacques LeClerc at SCI Phoenix cancelled Plaintiff's pain medication, Gabapentin and Norco, which he was receiving for severe discomfort caused by his left hip. This pain medication had been prescribed because Tylenol was not strong enough to alleviate Plaintiff's pain.

49.     Plaintiff's surgery scheduled for February 16, 2021, was cancelled on April 13, 2020, by Dr. Shaner's office due to COVID-19 precautions.

50.     Attempts to reschedule Plaintiff's surgery in 2020 were unsuccessful due to Dr. Shaner's office failure to return calls and surgeries not being scheduled due to COVID-19 restrictions.

51.     On or about September 3, 2020, SCI Phoenix Clinical Coordinator Kathleen Levy was informed that Dr. Shaner was no longer with Temple University Hospital Orthopedics, and that Plaintiff needed a new evaluation of his hip prior to scheduling surgery.

52. An evaluation appointment was scheduled for November 17, 2020, at Temple University Hospital Orthopedics.

53. On or about November 16, 2020, Plaintiff tested positive for COVID-19, which caused his evaluation appointment to be cancelled.

54. In approximately December 2020, Plaintiff was authorized to use a wheelchair for traversing long distances due to his left hip pain. As a result of the pain in his left hip and his need for crutches, SCI Phoenix authorized Plaintiff to use a wheelchair.

55. On or about December 24, 2020, Nurse Practitioner Jeanne DeFrancesco at SCI Phoenix observed Plaintiff grimacing in pain and having difficulty moving because he was not able to get the hip replacement surgery.

56. On or about February 16, 2021, Dr. Matthew Lorei of Temple Orthopedics re-evaluated Plaintiff's left hip. Dr. Lorei confirmed that Plaintiff still needed surgery to remove the prosthetic left hip, cleanse the area because of the septic joint, and implant an antibiotic spacer to treat the infection.

57. Upon information and belief, when Temple University Hospital Orthopedics contacted SCI Phoenix, Dr. Lorei was informed that SCI Phoenix Medical Department personnel requested that Plaintiff be given the furthest possible date for surgery, which was not until one year later in 2022.

58. On or about May 3, 2021, at Plaintiff's request, Plaintiff received the proper size of crutches, which were longer than the shorter crutches Plaintiff had been given at the time of his incarceration in November 2019.

59. On or about May 17, 2021, Plaintiff was first seen by Physical Therapist John Waters at SCI Phoenix to help with his hip pain and mobility issues, which, upon information and belief,

8

was a result of Dr. Lorei's evaluation and/or at the request of Dr. Kaminsky. Waters told Plaintiff that if he would have had more therapy, he would have more mobility.

60. Waters also noted that Plaintiff was not scheduled for surgery until 2022.

61. On or about May 18, 2021, Dr. Donald Desantis at SCI Phoenix noted that Plaintiff needed higher doses of pain medication until plaintiff's hip replacement surgery occurred.

62. On or about June 16, 2021, Defendant Walsh stated in the medical records after examining Plaintiff that Plaintiff had multiple surgeries for his hip postponed due to COVID restrictions and Plaintiff's COVID diagnosis.

63. On or about June 20, 2021, Defendant Walsh denied Plaintiff an increase in pain medication, telling him that he needed to learn to cope with the pain.

64. On or about June 30, 2021, Nurse Practitioner DeFrangesco examined Plaintiff for a fall suffered on June 19, 2021, caused by his hip condition, which caused spasms in Plaintiff's back and leg and an inability to sleep. When Plaintiff fell in his cell, he landed on his left elbow and left side of his back.

65. Nurse Practitioner DeFrangesco gave Plaintiff a Baclofen renewal prescription and Naproxen for the increased pain caused by plaintiff's fall and hip pain.

66. On or about July 20, 2021, Plaintiff again was examined by Nurse Practitioner. DeFrangesco for pain in his hip. Nurse Practitioner DeFrangesco noted in medical records that Plaintiff ambulated with crutches and antalgic gait, which is an abnormal walking pattern caused by pain that can cause limping.

67. During this examination, Nurse Practitioner DeFrangesco noted in the medical records that Plaintiff's surgery was not scheduled until early 2022.

68. On or about August 6, 2021, Defendant Walsh noted Plaintiff's increased pain from the delay of his left hip surgery and refused to approve an increase in pain medication. Further, Defendant Walsh told Plaintiff that he did not have time to assess him completely, even though, Plaintiff complained that the constant pain on his left side was spreading to his right side.

69. After numerous sick calls, on or about August 31, 2021, Plaintiff was denied an increase in his pain medication for his hip by Defendant Letizio who, upon information and belief, succeeded Dr. Weiner as Medical Director at SCI Phoenix.

70. At that time, Defendant Letizio told Plaintiff to stop making sick calls; and that he, the doctor, had a bad back but he still performed his job; and that Plaintiff had to learn to deal with the pain.

71. During 2020 and 2021, Plaintiff's hip condition and arm and rib pain from the constant use of crutches significantly worsened.

72. On or about September 14, 2021, Nurse Practitioner Devin Kennedy referred Plaintiff for a consultation for an orthopedics follow up appointment in November 2021 in preparation for a potential surgery date scheduled for January 17, 2022, which was subsequently rescheduled.

73. On or about March 15, 2022, Plaintiff had his follow up consultation appointment at Temple University Hospital with orthopedic specialist Dr. Lorei. This consultation appointment resulted in the scheduling of Plaintiff's hip surgery for March 2023.

74. Upon information and belief, Plaintiff is currently scheduled for an orthopedic consultation appointment for his hip at Einstein Medical Center in Montgomery County in or about the first week of June 2022.

75. Upon information and belief, the consultation at Einstein Medical Center resulted from Plaintiff's deteriorating condition, the repeated one-year delays of his scheduled surgeries at

Temple University Hospital (the most recent delay being until March 2023) and conversations between the undersigned counsel and counsel for the medical defendants pertaining to the allegations in the within lawsuit.

76. As of the filing date of this amended complaint, Plaintiff still has not received his much-needed hip surgery; and as a result, he has continued to suffer with severe hip pain for two and a half years.

77. Plaintiff's left hip cannot bear any weight, which requires him to use crutches and a wheelchair because he is unable to walk without severe pain.

78. As a result of Plaintiff's hip condition and the delay in getting him hip replacement surgery, Plaintiff's left leg and left foot are swollen, painful and discolored.

79. Due to the continual use of crutches, Plaintiff experiences arm, back and shoulder pain as well as bruised ribs.

## V.     ADMINISTRATIVE REMEDIES

80. Plaintiff has exhausted all administrative remedies to the fullest extent possible while incarcerated at SCI Phoenix.

## VI.     CLAIMS FOR RELIEF

### A.     FIRST CAUSE OF ACTION: DENIAL OF MEDICAL TREATMENT
### PLAINTIFF V. MEDICAL DEFENDANTS
### FEDERAL CONSTITUTIONAL CLAIMS

81. The allegations set forth in paragraphs 1 through 80 are incorporated as if fully set forth herein.

82. The foregoing conduct of the Medical Defendants, acting under color of state law, was undertaken in concert and conspiracy and as part of an effort to unlawfully deny Plaintiff medical

treatment and otherwise deprive Plaintiff of his civil and constitutional rights, including his rights, privileges, and immunities under the Eighth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

83. Because of his need for a hip replacement, Plaintiff has suffered with severe pain for well over two years, since his most recent admission to SCI Phoenix in November 2019.

84. Each Medical Defendant was aware of Plaintiff's serious medical needs.

85. The seriousness of Plaintiff's medical needs was obvious to the Medical Defendants because of his documented need for a hip replacement, his pain, the infection in his hip and his need for crutches and wheelchair because of his inability to walk.

86. Plaintiff repeatedly emphasized the seriousness of his medical needs during his onsite medical consultations with the Medical Defendants.

87. The actions and omissions of the Medical Defendants delayed Plaintiff's necessary medical treatment for non-medical reasons, including, but not limited to, the failure to timely schedule and treat his severe hip pain and infection and other circumstances attendant to the breakdown in communication among the Medical Defendants regarding the continuity of Plaintiff's care as well as the severity and urgency of his medical needs.

88. As a direct and proximate result of the Medical Defendants' actions and omissions, Plaintiff suffered serious physical injuries resulting in the permanent shortening of his left leg and difficulty in walking.

89. The acts and omissions of the Medical Defendants were committed willfully, wantonly, maliciously, intentionally, outrageously, deliberately, and/or by conduct so egregious as to shock the conscience.

90. The acts and omissions of the Medical Defendants were committed without cautious regard for due care, and with such wanton and reckless disregard of the consequences as to show the Defendants' indifference to the seriousness of Plaintiff's medical needs and the risk of serious harm.

91. The Medical Defendants conspired to inflict harm on Plaintiff and deprive him of his constitutional rights.

92. The Medical Defendants violated Plaintiff's constitutional rights by causing him harm through their protracted delay of his necessary and proper medical treatment.

93. As a direct and proximate result of the Medical Defendants' illegal and unconstitutional actions, Plaintiff suffered pain, fear, anxiety, physical injuries, severe emotional trauma, and the loss of the enjoyment of life, all to his great detriment and loss.

94. As a direct and proximate result of the Medical Defendants' illegal and unconstitutional actions, Plaintiff suffered and continues to suffer financial loss and deprivation of other liberty interests, all to his great financial detriment and loss.

    **B.    SECOND CAUSE OF ACTION: STATE LAW NEGLIGENCE CLAIMS PLAINTIFF V. MEDICAL DEFENDANTS**

95. The allegations set forth in paragraphs 1 through 94 are incorporated as if fully set forth herein.

96. The Medical Defendants had the duty to comply with generally accepted medical standards of care in their medical treatment of Plaintiff.

97. The Medical Defendants' violation of their duty of care to Plaintiff was a direct and proximate cause and a substantial factor in bringing about Plaintiff's damages, as outlined above, and as a result the Medical Defendants are liable to Plaintiff.

98. Because the individual Medical Defendants were acting as agents, servants and/or employees of Defendant Wellpath, and because the Medical Defendants were acting within the scope and course of their employment, and under the direct control and supervision of Defendant Wellpath, Defendant Wellpath is liable to Plaintiff on the basis of *respondeat superior* liability.

    C.    **THIRD CAUSE OF ACTION: MONELL CLAIMS PLAINTIFF V. WELLPATH, LLC**

99. The allegations set forth in paragraphs 1-98 inclusive, are incorporated as if fully set forth herein.

100. The violations of Plaintiff's constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution, Plaintiff's damages, and the conduct of the individual defendants were directly and proximately caused by the actions and/or inactions of defendant Wellpath, LLC which has, with deliberate indifference failed to establish policies, practices and procedures to ensure that inmates at SCI Phoenix receive appropriate care for serious illnesses and, if necessary, timely outside medical services.

101. As a direct and proximate result of defendant Wellpath's above-described unlawful and malicious conduct, committed under color of state law, and while acting in that capacity, defendant Wellpath, LLC deprived Plaintiff of the equal protection of the laws and Plaintiff's rights, privileges and immunities under the laws and the Constitution of the United States, Plaintiff's right to adequate medical care, to be secure in one's person and property and to due process and equal protection of the law, all to Plaintiff's great detriment and loss. As a result, Plaintiff suffered grievous harm, in violation of his rights under the laws and Constitution of the United States and in particular, the Eighth and Fourteenth Amendments thereof and 42 U.S.C. § 1983.

102. As a direct and proximate result of the acts and omissions of defendant, Plaintiff was forced to endure great pain and mental suffering and was deprived of physical liberty and adequate medical care, all to plaintiff's great detriment and loss.

103. Defendant Wellpath, LLC permitted, encouraged, tolerated, ratified and was deliberately indifferent to a pattern, practice and custom of:

    a.    Failure to provide adequate medical care to inmates suffering from a serious medical condition;

    b.    Staffing medical personnel unfit to provide proper medical attention and care; and

    c.    Failure of medical personnel to prevent, deter, report or take action against the unconstitutional actions of other medical personnel of Wellpath, LLC., that violate the constitutional rights of inmates as presented herein.

104. Defendant Wellpath, LLC was deliberately indifferent to the need to:

    a.    Provide proper medical care to inmates with serious medical conditions;

    b.    Monitor medical personnel whom it knew or should have known were failing to provide proper medical treatment to inmates with serious medical conditions;

    c.    Train its medical personnel in the appropriate exercise of medical procedures;

    d.    Facilitate, encourage, tolerate, ratify and/or was deliberately indifferent to the needs of inmates with serious medical conditions regardless of financial constraints; and

    e.    Failure to properly train, supervise and discipline medical personnel who do not follow proper medical protocol.

105. Defendant Wellpath LLC was deliberately indifferent to the need for more or different training, supervision, investigation or discipline in the areas of:

    a.    Proper identification of serious medical conditions;

      b.      Exercise of their medical knowledge; and

      c.      Giving proper medical treatment to inmates with serious medical needs.

106. The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the danger or harm to inmates like Plaintiff and the need for more or different training, investigation and discipline are policies and customs of Wellpath, LLC and have caused medical personnel, including the Medical Defendants, to believe that they can violate the rights of inmates, with impunity with the foreseeable result that medical staff are more likely to violate the constitutional rights of inmates.

107. The actions of all defendants, acting under color of state law and/or in concert or conspiracy with each other, deprived Plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States, in particular, the rights to be free from bodily harm and the right to receive proper medical care.

108. Defendant Wellpath, LLC and the individual named defendants, acting in concert and conspiracy with each other, have by the aforementioned actions deprived plaintiff of his constitutional and statutory rights.

109. By these actions, all defendants have deprived plaintiff of his rights secured by the Eighth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.

## **PUNITIVE DAMAGES**

110. Plaintiff incorporates paragraphs 1 through 109 of this complaint as though fully set forth herein.

111. The conduct of the individual Defendants was outrageous, malicious, wanton, willful, reckless, and intentionally designed to inflict harm upon Plaintiff.

112. As a result of the actions of the individual Defendants, as discussed in the foregoing paragraphs, Plaintiff is entitled to punitive damages as to each cause of action.

## JURY DEMAND

113. Plaintiff demands a jury as to each defendant and as to each count.

WHEREFORE, Plaintiff requests the following relief:

      a.    Compensatory damages;

      b.    Punitive damages

      c.    Reasonable attorney's fees and costs; and

      d.    Such other and further relief as appears reasonable and just.

/s/ Laurie R. Jubelirer
Laurie R. Jubelirer, Esquire
Jubelirer Law, LLC
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

    I, Laurie R. Jubelirer, hereby certify that on May 20, 2022, the Plaintiff's First Amended Complaint was filed electronically and is available for viewing and downloading from the Court's Electronic Case Filing System.

                                  /s/ Laurie R. Jubelirer
                                  Laurie R. Jubelirer, Esquire
                                  Jubelirer Law, LLC
                                  Attorney for Plaintiff